UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA FELIPE SUCHITE, an individual on behalf of herself and others,<br><br>                                    Plaintiffs,<br><br>v.<br><br>ABM AVIATION, INC., a Georgia corporation, et al.<br><br>                                    Defendants. | Case No.: 24cv3-LL-SBC<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STRIKING CLASS CLAIMS AND STAYING THE ACTION PENDING PLAINTIFF SUCHITE'S ARBITRATION**<br><br>**[ECF No. 8]** |

Plaintiff Maria Felipe Suchite ("Plaintiff") brings this action against Defendant ABM Aviation, Inc. and ABM Industries Incorporated ("Defendants") asserting ten causes of action arising from her employment with Defendants. ECF No. 1 at 33-66 (hereinafter "Complaint"). Defendants filed a Motion to Compel Arbitration of Plaintiff's claims pursuant to the Federal Arbitration Act. ECF No. 8. Defendants also move to strike class allegations in Plaintiff's Complaint and dismiss or stay the action. *Id.* Plaintiff filed an Opposition to Defendants' Motion ("Oppo."), and Defendants filed a Reply. ECF Nos. 11, 13. The Court finds this matter suitable for determination on the papers and without oral

1

24cv3-LL-SBC

argument pursuant to Civil Local Rule 7.1. Upon review of the parties' submissions and the applicable law, the Court **GRANTS** Defendants' Motion to Compel Arbitration. The Court also **GRANTS** Defendants' Motion to Strike the Class Allegations in the Complaint and **STAYS** the action pending the completion of Plaintiff's individual arbitration.

## I.     BACKGROUND

In or around August 2023, Plaintiff began working as a cleaner in the Southwest Airline terminal at the San Diego International Airport for Defendants. Complaint ¶ 21; *see also* ECF No. 8-1 ¶ 5 (hereinafter "Tamada Decl."). Plaintiff alleges that she worked there until she was "involuntarily terminated" by Defendants on October 6, 2023. Complaint ¶ 21. As part of her employment with Defendants, Plaintiff entered into a written "Mutual Arbitration Agreement" (hereinafter "Agreement"). Tamada Decl. ¶ 9. Plaintiff's Job Offer Letter, which includes the Agreement, was signed by Plaintiff on July 26, 2023. ECF No. 8-1 at 7-21 ("Exhibit 1 to the Tamada Decl."). The Agreement provides in relevant part:

> [T]he Company and I agree as follows . . . . Final and binding arbitration before a single, neutral arbitrator, instead of a judge and jury in court, shall be the exclusive remedy for any 'Covered Claim' . . . . 'Covered Claims' include, but are not limited to. . . any provision of federal or state labor code or a Wage Order, for unpaid fees, expenses, wages, or overtime, for unpaid compensation or penalties for missed meal or rest breaks, for wrongful termination, for unfair competition. . . or any federal, state, or local laws to the full extent permitted by applicable federal law after the application of Federal Arbitration Act ('FAA') preemption principles . . . . As to any Covered Claim, each party waives to the maximum extent permitted by federal law, the right to bring, maintain, or participate in any class, collective, or representative proceeding….Further, Covered Claims must be brought in the individual capacity of the party asserting the claim, and cannot be maintained on a class, collective, or representative basis, to the full extent permitted by applicable federal law after the application of federal preemption principles."

24cv3-LL-SBC

Tamada Decl., Exhibit 1 at 8-9. Since 2014, Defendants have required all newly-hired employees, including Plaintiff, to execute the Agreement. Tamada Decl. ¶ 6. Plaintiff accessed the Agreement via a web portal maintained by a third-party Oracle Corporation and her electronic signature is on the Agreement Tamada Decl. ¶¶ 6-14. Defendants state that they "do[] not limit the amount of time that employees have to review or ask questions about their job offer and Agreement." *Id.* ¶ 15.

According to Plaintiff, she did not understand that she was signing an Arbitration Agreement, because she only understands Spanish. Oppo. at 7, 11. Plaintiff argues that "[s]omeone else [her bookkeeper], not the Plaintiff logged in and completed the onboarding paperwork for the Plaintiff because Plaintiff does not read English." *Id.* at 10. In sum, Plaintiff argues that "the Agreement is unenforceable under California law because it is procedurally and substantively unconscionable." *Id.* at 9.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs motions to compel arbitration. 9 U.S.C. § 1 et seq. In deciding whether to compel arbitration, the court must consider two "gateway issues": (1) whether there is a valid agreement to arbitrate between the parties, and if so (2) whether the agreement encompasses the dispute. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation and quotations omitted). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

24cv3-LL-SBC

460 U.S. 1, 24-25 (1983); *see also Tomkins v. 23andMe, Inc*., 840 F.3d 1016, 1022 (9th Cir. 2016).

### III.   DISCUSSION

#### A. Evidentiary Objections

The Court first addresses Defendants' Objection to evidence submitted in support of Plaintiff's Opposition, including the Declarations of Maria Felipe Suchite and Laurie Davila-Felix. *See* ECF No. 14. Defendants object to the Declaration of Maria Felipe Suchite in its entirety, and move to strike it on the basis that it "is inadmissible because it is an improperly authenticated translation of testimony given in a foreign language and therefore lacks foundation." *Id*. at 2. Written translations must be properly authenticated. *See* Fed. R. Evid. 901(a). As such "[w]itness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator." *Jack v. Trans World Airlines, Inc*., 854 F. Supp. 654, 659 (N.D. Cal. April 25, 1994) (citing Fed. R. Evid. 604 & 901). Although Plaintiff's Declaration has a "translation authentication" submitted by Laurie Davila, the authentication does not indicate that she is a qualified translator or certified interpreter. *See Jack*, 854 F. Supp. at 659. Also, there is no indication that the English version of the Declaration is a true and correct translation as it appears to have been done via "teleconference." *See generally Sunrider Corp. v. Bountiful Biotech Corp*., 2010 WL 4590766 at *16 (C.D. Cal. Oct. 8, 2010); *see also Consejo de Desarrollo Economico de Mexicali, AC v. United States*, 438 F. Supp. 2d 1207, 1226 (D. Nev. July 3, 2006) (vacated and remanded on other grounds) (sustaining objection to declarations that appeared to have been written originally in Spanish and later translated into English, absent any indication that the English versions of the declarations were true and correct translations). Accordingly, the Court **SUSTAINS** Defendants' Objection to Plaintiff's Declaration.

4

Defendants also object to the Declaration of Laurie Davila in its entirety on the grounds that it is irrelevant. ECF No. 14 at 7. The Court ultimately did not rely on Ms. Davila's Declaration. As such, this objection is **MOOT**.

Plaintiff objects to a portion of the Declaration submitted by Lorraine Bettencourt in support of Defendants' Motion to Compel on the grounds that it lacks foundation and is prejudicial hearsay. ECF No. 11-3. The Court ultimately did not rely on Ms. Bettencourt's Declaration. As such, this objection is **MOOT**.

Finally, the Court notes that Plaintiff requests that the Court hold an evidentiary hearing "to the extent the Court deems necessary." Oppo. at 18. The Court declines to hold an evidentiary hearing as it does not find it necessary in this case.

### B. Defendants' Motion to Compel

Defendants argue that Plaintiff must arbitrate her claims because she signed a valid arbitration agreement as part of her employment contract. Plaintiff opposes on the grounds that the Agreement is unenforceable because it is procedurally and substantively unconscionable. The Court addresses the parties' agreements in turn.

### 1. Whether a Valid Arbitration Agreement Exists

Defendants bear the burden of establishing that a valid arbitration agreement exists between them and plaintiff by a preponderance of the evidence. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). In deciding whether parties have agreed to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Nguyen*, 763 F.3d at 1175. "It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565. "'Mutual assent may be manifested by written or spoken words, or by conduct,' and acceptance of contract terms may be implied through action or inaction." *Id.* (internal citations omitted). "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer

contains.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972)). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id.* However, "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 566 (quoting *Windsor Mills*, 25 Cal. App. 3d at 993).

In their pending Motion, Defendants argue that Plaintiff is required to arbitrate her claims pursuant to the Agreement that she signed. Defendants include the Agreement as an exhibit to the Declaration of Paige Tamada, a senior director of human resources compliance and policies, for Defendant ABM Industries Incorporated. Tamada Decl., Exhibits 1, 2. In her Declaration, Ms. Tamada states that Defendants provided the Mutual Arbitration Agreement to Ms. Suchite, and that Plaintiff accessed and reviewed the Agreement through a third-party web portal maintained by Oracle Corporation. Tamada Decl. ¶¶ 5-14. Ms. Tamada states that Plaintiff electronically signed the Agreement through Defendants' hiring portal on July 26, 2023. *Id.*; *see also* Tamada Decl., Exhibits 1, 2. Ms. Tamada also explains that for Plaintiff to have viewed and signed the Agreement, she was required to log in using a one-time password and scroll to the bottom of the Agreement which clearly stated in bold that all covered matters "be submitted to arbitration rather than to a judge and jury in court," and that "by my signature or electronic signature, I knowingly and voluntarily agree to this mutual arbitration agreement." *Id.* at Exhibit 1. Indeed, a review of the Agreement reveals that it bears Plaintiff's name, her electronic signature, and the date July 26, 2023. Tamada Decl., Exhibits 1 and 2.

In her Opposition to the pending Motion, Plaintiff challenges the validity of the Agreement, stating that "[n]o one explained to Plaintiff what she was signing" and that "Plaintiff learned for the first time that there is an arbitration agreement after [her counsel]

obtained her personnel file." ECF No. 11 at 7. Plaintiff argues that in reviewing her onboarding paperwork:

> Plaintiff Suchite visited the website address ABM provided and saw it was only in English. To help with her with the application, Plaintiff met with her multilingual bookkeeper, who delegated the job to her assistant, who logged into the website ABM provided and completed Plaintiff's onboarding paperwork. . . . Given these facts, Plaintiff very respectfully requests the Court to find that Defendants fail[ed] to meet [their] burden to show the existence of an agreement to arbitrate because there was no mutual assent, as required to prove a contract.

*Id.* at 11 (internal citations omitted).

However, an "employer [is not] required to explain the details of the contract to Plaintiff or to force him to read it." *Pinto v. Squaw Valley Resort, LLC*, No. 17-cv-02281-MCE-CKD, 2018 WL 5630702, at *2 (E.D. Cal. Oct. 31, 2018). Plaintiff admits that she authorized her multilingual bookkeeper to help her with her paperwork, and the fact that Plaintiff failed to do her due diligence in reviewing the Agreement is not sufficient to challenge the existence of an agreement. *See generally Trevino v. Acosta, Inc.*, No. 17-cv-06529-NC, 2018 WL 3537885, at *7 (N.D. Cal. July 23, 2018) ("[T]he Court cannot invalidate the terms of the signed arbitration agreement merely because Trevino did not understand the agreement or chose not to read it.").

Accordingly, the Court finds that Defendants have met their burden of establishing that a valid, written agreement to arbitrate exists between the parties.

### 2. Whether The Agreement Encompasses the Dispute

The Court must now determine whether the Agreement encompasses the dispute at issue. The Agreement states that "ABM Industries Incorporated and its subsidiary companies (collectively, the 'Company') and I desire to resolve fairly and quickly, all disputes between us . . . . including but not limited to those arising from and/or relating in any way to any aspect of my hiring, my employment, my compensation, and/or the end of my employment, with the Company." Tamada Decl., Exhibit 1 at 8.  Thus, the Agreement

is between Plaintiff and Defendants. All of Plaintiff's claims asserted in this action relate to her employment with Defendants and are thus encompassed by the Agreement.

Because there is a valid agreement to arbitrate between the parties and the claims raised in Plaintiff's Complaint fall within the scope of the parties' Agreement, the Court must compel arbitration of Plaintiff's claims, unless the Agreement is unenforceable.

### 3.  Whether the Agreement is Enforceable

Next, the Court will analyze whether the Agreement is valid and enforceable under 9 U.S.C. § 2. Plaintiff argues that the Agreement is procedurally and substantively unconscionable. Oppo. at 9-18.

### i.  Procedural Unconscionability

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000). "The term contract of adhesion signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* "The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) ("Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement."). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation,'" while "[s]urprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922 (citations omitted).

24cv3-LL-SBC

Plaintiff argues that the Agreement is unenforceable because it is an unconscionable adhesion contract. The Court finds that the Agreement is a contract of adhesion. There was a significant imbalance in bargaining power between Plaintiff and Defendants as Defendants are a large company with locations throughout the nation. The Agreement was required as part of Plaintiff's employment with Defendants, did not contain an opt-out provision, and Plaintiff signed it in connection with her offer letter. Thus, based on the standardized, take-it-or-leave it nature of the agreement, the Court finds that the Agreement is a contract of adhesion. The Court therefore finds that Plaintiff has established some degree of procedural unconscionability.

In assessing the degree of procedural unconscionability, the Court finds it minimal in light of the circumstances surrounding the creation of the contract. Several courts have found that "mandatory arbitration agreements offered as a precondition to employment are enforceable provided there is no indication that applicants signed the agreement under duress, were lied to, or otherwise manipulated into signing the agreement." *See, e.g., Snipes v. Dollar Tree Distribution, Inc.*, No. 15-CV-00878-MCE-DB, 2019 WL 5830052, at *3 (E.D. Cal. Nov. 7, 2019) (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)); *Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2018 WL 3417505 (N.D. Cal. July 13, 2018). "The adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261-62 (citing *Baltazar*, 62 Cal. 4th at 1245).

Plaintiff claims that Defendants provided the Agreement only in English knowing she had limited English capability, but this adds "only a minimal degree of procedural unconscionability" when there is an opportunity to seek help. *See Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) (compelling arbitration where the company provided only an English-language arbitration agreement to a Spanish-speaking employee). Plaintiff had an unlimited amount of time to review or ask questions about her job offer and Agreement. Tamada Decl. ¶ 15.

In other words, Plaintiff was afforded an opportunity to ask questions or request a translation, but she did not do so. S*ee Chico*, 2014 WL 5088240, at \*15 (finding that "if [the company] did not give [employee] an opportunity to ask questions, consult with an attorney, take the arbitration agreements home, or obtain a Spanish translation of the [arbitration agreement], it would support [employee's] claim of procedural unconscionability"). By having time to seek assistance or inquire further about the arbitration agreement, Plaintiff faced a lessened degree of oppression and surprise.

The Court concludes that the arbitration agreement is an adhesion contract with minimal procedural unconscionability. Thus, enforceability turns on whether the arbitration agreement has a high degree of substantive unconscionability.

### ii.  Substantive Unconscionability

Having found that the Agreement is only minimally procedurally unconscionable, the Court must find that the Agreement is substantively unconscionable to a much greater degree to conclude that it, as a whole, is unconscionable. *Armendariz*, 24 Cal. 4th at 114.

Plaintiff argues that the Agreement is substantively unconscionable because: (1) it disallows *Berman* proceedings[1]; (2) it unlawfully bars claims via the Private Attorney General Act ("PAGA"); (3) it unlawfully requires the parties to bear their own attorneys' fees and costs; and (4) the unconscionable provisions may not be severed. Oppo. at 12-18. The Court will address each argument in turn.

Plaintiff's claim that the Agreement does not allow for Berman proceedings is unfounded. Upon the Court's own review of the Agreement, it explicitly states:

> Nothing in this Agreement precludes me from filing a charge or from participating in an administrative investigation of a charge before an

---

[1] A Berman hearing is conducted by a deputy commissioner, and the procedure is "designed to provide a speedy, informal, and affordable method of resolving wage claims." Cal. Code Regs., tit. 8, §§ 13502, 13506; *see also Cuadra v. Millan*, 17 Cal. 4th 855, 858 (1998).

appropriate government commission, body, or agency, be it federal, state or local. Similarly, this agreement does not preclude the parties from conciliating any charge pending before an appropriate government commission, body or agency.

Agreement, p. 4, ¶ E. Thus, based on the plain reading of the Agreement, there is nothing that prohibits Plaintiff from having chosen to file an administrative claim with the Labor Commissioner to seek a Berman-hearing. Additionally, Plaintiff's reliance on *OTO, L.L.C. v. Kho* is misplaced. 8 Cal. 5th 111 (2019). The plaintiff in *OTO* was given an arbitration agreement without an opportunity to read it. *Id.* at 118. Ms. Suchite was undeniably given an opportunity to read and understand the Agreement at issue in her case, but she chose not to. Additionally, unlike the *OTO* case, here, Plaintiff has failed to allege any facts indicating that she signed the Agreement under a "coercive setting." *Id.* at 137. Accordingly, Plaintiff's argument on substantive unconscionability on this ground fails.

Regarding the PAGA claims, Plaintiff argues that the Agreement is substantively unconscionable because it prohibits the prosecution of a representative PAGA action in violation of California' rule prohibiting wholesale waivers of PAGA claims. Oppo. at 15 (internal citations omitted). Notably, Plaintiff does not even bring a PAGA claim in her Complaint. Accordingly, the Court need not address Plaintiff's argument that the Agreement is substantively unconscionable on this basis. Plaintiff argues more generally that the Agreement is unconscionable because it "mandates that all claims in arbitration to be pursued 'in the individual capacity of the party asserting the claim.'" Oppo. at 15 (citing Tamada Decl., Exhibit 1 ¶ B). Plaintiff's argument on this ground also fails because the Court is bound to "enforce arbitration agreements according to their terms – including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("Requiring the availability of classwide arbitrations . . . creates a scheme inconsistent with the [Federal Arbitration Act]."); *Carter v. Rent-A-Center, Inc.*, 718 F. App'x 502, 504 (9th

Cir. 2017) (explaining that *Concepion* "foreclos[es] any argument" that "an arbitration agreement is unconscionable solely because it contains a class action waiver").

Plaintiff's argument that the parties are required to bear their own attorneys' fees and costs does not make the Agreement substantively unconscionable. The Agreement clearly provides that ABM agreed "that it will pay all fees and costs of AAA and the arbitrator," including "the initial filing fee associated with filing the demand." Agreement ¶ C. *See Armendariz*, 24 Cal.4th at 110-11 ("[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court."). The Agreement also allows for the arbitrator to exercise his or her discretion to award attorneys' fees and costs associated with the arbitration. Agreement ¶ C. Accordingly, Plaintiff's argument about attorneys' fees and costs is unfounded.

Having found that there are no substantively unconscionable provisions in the Agreement, the Court **DENIES AS MOOT** Plaintiff's argument about severing the unconscionable provisions. In sum, Plaintiff's arguments are unavailing. The Court finds that Plaintiff fails to show that the Mutual Arbitration Agreement is substantively unconscionable. Accordingly, all of Plaintiff's individual claims are subject to arbitration.

### 4. Defendants' Motion to Strike Class Claims and to Dismiss or Stay the Action Pending the Outcome of Arbitration

Defendants request that the Court strike Plaintiff's class claims. The Court has already found that Plaintiff's individual claims are subject to arbitration. That leaves open the question of how to handle Plaintiff's class allegations and claims. As set forth above, the Agreement does not permit arbitration of the class or representative claims but instead includes an enforceable waiver of those claims.

The Agreement states in relevant part:

As to any Covered Claim, each party waives to the maximum extent permitted

12

24cv3-LL-SBC

by federal law, the right to bring, maintain, or participate in any class, collective, or representative proceeding . . . Further, Covered claims must be brought in the individual capacity of the party asserting the claim, and cannot be maintained on a class, collective or representative basis, to the full extent permitted by applicable federal law after the application of federal preemption principles.

Agreement ¶ C. The Agreement has clear language that it does not permit arbitration of class, collective, or representative actions. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 139 S. Ct. 1407, 1417 (2019) ("Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself."). Additionally, California and U.S. Supreme Courts have recognized, class action or representative action waivers like the one above are enforceable. *See Concepcion*, 563 U.S. at 351; *Carter v. Rent-A-Center, Inc.*, 718 F. App'x at 504 (9th Cir. 2017). Therefore, the Court **GRANTS** Defendants' Motion to Strike class claims because of the valid waiver in the Agreement.

Thus, Plaintiff's only remaining claims are the individual claims that are subject to arbitration. The Ninth Circuit has held that a district court has the discretion to stay or dismiss a plaintiff's claims where all of the relevant claims are subject to arbitration. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (citing *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147-48 (9th Cir. 1978)). The Court finds it appropriate to **ORDER** Plaintiff Suchite and Defendants to arbitration and **STAY** the action pending completion of those proceedings. The Parties are directed to file a joint status update within **seven days** of completing arbitration.

## IV.    CONCLUSION

In accordance with the foregoing, the Court **HEREBY ORDERS**:

1.     Defendants' Motion to Compel Plaintiff Suchite to arbitration is **GRANTED**;

2.     Defendants' Motion to Strike Class Allegations is **GRANTED**;

3.     The Court **STAYS** this action pending the outcome of Plaintiff Suchite's individual arbitration proceedings;

13

24cv3-LL-SBC

4.      The parties are **ORDERED** to file a joint status update within **seven days** of completing the arbitration proceedings.

**IT IS SO ORDERED**.

Dated:  July 22, 2024

_____

Honorable Linda Lopez
United States District Judge

24cv3-LL-SBC